IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2005

## STATE OF TENNESSEE v. DWAYNE TYRONE SIMMONS

**Direct Appeal from the Circuit Court for Marshall County**
**No. 15813    Charles Lee, Judge**

---

**No. M2004-01105-CCA-R3-CD - Filed August 10, 2005**

---

A Marshall County Circuit Court jury convicted the appellant, Dwayne Tyrone Simmons, of aggravated burglary and theft of property valued less than $500.  The trial court sentenced the appellant to concurrent sentences of eight years, ten months for the aggravated burglary conviction and nine months, eighteen days for the theft conviction.  In this appeal, the appellant raises various issues, including that the evidence is insufficient to support his aggravated burglary conviction and that he was unable to present photographs of the home in question to the jury.  Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Dwayne Tyrone Simmons, Pro se.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The appellant represented himself at trial.[1]  Jimmy C. Callahan testified that on August 19, 2003, he was at home and saw the appellant at the unoccupied house next door.  The appellant was carrying items out of the house and putting them in his car.  Mr. Callahan walked over to the

---

[1]Before trial, the trial court ordered that the appellant be evaluated to determine whether he was competent to stand trial.  The evaluation is not included in the record on appeal; however, the trial court later entered an order allowing the appellant to represent himself.

appellant and told the appellant that Frank Wells owned the house. Mr. Callahan then returned to his own home and asked his wife to telephone Rita Holoman, Frank Wells' sister. Ms. Holoman asked that Mr. Callahan return to the house to see what the appellant was doing. Mr. Callahan walked back to the house and asked the appellant what he was doing there. The appellant told Mr. Callahan that he was thinking about buying the property. Mr. Callahan then had his wife telephone the police.

Officer Scott Braden of the Lewisburg Police Department testified at trial that on August 19, 2003, he was dispatched to 1781 Nashville Highway to investigate a report of a suspicious person and a suspicious vehicle. He arrived at the location about 7:00 p.m., and it was still light outside. Officer Braden saw the appellant's station wagon in the driveway and saw the appellant walking from the house. The front door of the house was open, and Officer Braden asked the appellant what he was doing. The appellant told the officer that he was interested in buying the house and was "checking it out." Officer Braden asked the appellant if the appellant knew the owner of the house, and the appellant stated that the house belonged to Frank Wells. Officer Braden then asked the appellant if he had taken anything from the house, and the appellant replied that he had taken some pots, pans, and candleholders. The appellant told the officer that he knew Mr. Wells and that he had thought it would be all right for him to take the items from the home. Officer Braden saw the items in the front passenger seat of the appellant's station wagon and told the appellant to take the items back into the house. Officer Braden also saw an old cash register in the back of the appellant's station wagon. According to the appellant, he had bought the cash register earlier that day in Pulaski.

Officer Braden spoke with dispatch and requested that the owner of the house be contacted regarding a description of the items in the house. Dispatch related to Officer Braden that an old cash register had been in the home. Officer Braden then arrested the appellant, and the appellant later admitted that he did not know Mr. Wells. After arresting the appellant, Officer Braden inspected the front door of the house and saw that the door frame had been damaged. He also went into the house and saw end tables and chairs in the living room and a bed in the upstairs bedroom. On cross-examination, Officer Braden testified that he did not see the appellant take any items out of the house and never saw the appellant go into the home. He stated that the house was habitable.

Frank Wells testified that he owned the property at 1781 Nashville Highway and that the house had been used as a rental property since 1995. He acknowledged that on August 19, 2003, the home was for sale or rent. He stated that a couch and chair were in the living room and that a bed was in the upstairs bedroom. He stated that at the time of the burglary, no one was living in the house but that he had checked on the home in early August and all of the doors were locked at that time and the front door frame was not damaged. He said that he did not know the appellant, that he did not give the appellant permission to go into the house, and that the items the appellant took from the house were worth less than $500. On cross-examination, Mr. Wells testified that the house had been vacant for a few months but that a family had rented the house until a few months before the burglary.

Sergeant Matt Owens of the Lewisburg Police Department testified that he went to 1781 Nashville Highway on August 19. When he arrived, Officer Braden was present and talking with the appellant. Sergeant Owens saw a cash register in the appellant's station wagon and a deep fryer, a candleholder, and cooking utensils in the car's front passenger seat. Sergeant Owens heard Officer Braden ask the appellant what he was doing there and if the appellant knew the owner of the home. According to the appellant, he had been thinking about buying the house and "was checking things out to see what needed to be repaired." The appellant also told Officer Braden that Frank Wells owned the house and that the appellant did not think Mr. Wells would mind if the appellant took items from the house. Initially, the appellant said that he had bought the cash register in Pulaski. However, the appellant later admitted that he had taken the cash register from the house.

Jonathan Rashad Hightower testified for the appellant that he was familiar with the house at 1781 Nashville Highway and that no one had lived in the house for about two years. When asked if the home was in good condition, he stated, "Not really to live in." On cross-examination, Mr. Hightower admitted that he resided in the Marshall County jail and had been convicted recently of aggravated robbery, burglary, attempted burglary, and failure to appear. The jury convicted the appellant of aggravated burglary, a Class C felony, and theft of property valued less than $500, a Class A misdemeanor. The trial court sentenced the appellant as a Range II offender to concurrent sentences of eight years, ten months for the aggravated burglary conviction and nine months, eighteen days for the theft conviction.

In his brief, the appellant lists the following three issues in his statement of the issues presented for review: (1) that he should have received a full mental evaluation before trial; (2) that he was not allowed to show pictures of the home in question to the jury; and (3) that Officer Braden illegally searched his car. In the appellant's statement of facts, he appears to raise many more issues, including that the evidence is insufficient to support his aggravated burglary conviction because the State failed to show that the house is a "habitation." However, the only issue included in the appellant's motion for new trial is the issue regarding his not being allowed to present photographs to the jury. Therefore, we will address that issue. We will also address the issue regarding the sufficiency of the evidence because it does not need to be raised in a motion for new trial in order to secure appellate review. See State v. Boxley, 76 S.W.3d 381, 389-90 (Tenn. Crim. App. 2001). However, because the appellant failed to raise the remaining issues in his motion for new trial, these issues are waived. See Tenn. R. App. P. 3(e).

## II. Analysis

### A. Sufficiency of the Evidence

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all

reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated burglary occurs when a person enters a habitation without the consent of the property owner "and commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. §§ 39-14-402(a)(3), -403(a). A "habitation" is "any structure, including buildings, module units, mobile homes, trailers, and tents which is designed or adapted for the overnight accommodation of persons." A structure does not have to be currently occupied in order to be a habitation. See State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999).

Taken in the light most favorable to the state, we conclude that the evidence is sufficient to support the appellant's conviction for aggravated burglary. The appellant argues that because the house was in disarray and in need of structural repairs, it ceased to be a habitation. However, Officer Braden testified that the house was habitable. Moreover, Frank Wells testified that the house had served as a rental home since 1995 and that a family had lived in the house up until a few months before the burglary. According to the definition of a habitation, the house only needed to be designed or adapted for the overnight accommodation of persons. The structure in question met the applicable statutory definition of "habitation," and the appellant was properly convicted of aggravated burglary.

## B. Admissibility of Photographs

Next, the appellant claims that he was unable to present photographs of the home to the jury to show that the house in question was not a habitation. We hold that the appellant is not entitled to relief on this issue.

The record reflects that on the morning of trial, before the State called its first witness, the appellant told the trial court that he needed his wife to testify on his behalf. The trial court stated that it would issue an instanter subpoena and would attempt to have her served immediately. Before the State rested its case-in-chief, the following exchange occurred:

> THE COURT: I am informed by the clerk's office that the defendant's wife, who we are attempting to -- whose subpoena has been issued, has contacted the clerk's office and said that her mother has passed away yesterday and she would not be here.

So my question for Mr. Simmons is:  Do you want me to direct this subpoena to be served and that she be forced to be here, Mr. Simmons?

MR. SIMMONS: I think not.

THE COURT: Pardon me?

MR. SIMMONS: I think not, Your Honor.

THE COURT: Are you requesting that the instanter subpoena which you have requested for your wife be withdrawn?

MR. SIMMONS: There are certain items in her possession that I need, and those are photographs of the place.

The trial court then offered to let the appellant telephone his wife.  However, the appellant was unable to contact her.

The appellant contends that his wife had important photographs of the house in question and that he was unable to present those photographs to the jury.  However, the appellant did not request a continuance in order to secure the presence of the witness.  Therefore, we hold that the appellant has waived this issue.  See Tenn. R. App. P. 36(a).

### III.  Conclusion

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction for aggravated burglary and theft.[2]

_____
NORMA McGEE OGLE, JUDGE

---

[2] We note that there are three indictments in the record, one for aggravated burglary and two for misdemeanor theft.  There are also three corresponding judgments of conviction in the record.  According to the judgment forms for the thefts, the appellant was convicted of two counts of misdemeanor theft and the second count was merged into the first.  However, the jury's verdict forms and the trial transcript indicate that the appellant was convicted of only one count of aggravated burglary and one count of misdemeanor theft.  Nevertheless, we cannot discern from the record the disposition of the second theft indictment.